**IN THE UNITED STATES DISTRICT COURT**
**FOR**
**THE MIDDLE DISTRICT OF ALABAMA**

THE UNITED STATES
    OF AMERICA

       vs.

CHRISTOPHER KENDELL RUSH

CRIMINAL ACTION NO.
2:07-Cr-178-WKW

VOLUME II OF II
2ND DAY OF
JURY TRIAL PROCEEDINGS

\* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| HEARD BEFORE: | The Hon. W. Keith Watkins |
| HEARD AT: | Montgomery, Alabama |
| HEARD ON: | February 5, 2008 |
| APPEARANCES: | Verne Speirs, Esq. |
| | Matthew Shepherd, Esq. |
| | Roianne Connor, Esq. |

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500

1                    **T A B L E   O F   C O N T E N T S**

2

3       **ITEM DESCRIPTION**                              **PAGE NO.**

4
        Table of Contents .........................     1
5
        Charge Conference .........................     3
6
        Closing Arguments
7            by Mr. Shepherd .......................    14

8       Closing Arguments
             by Ms. Connor .........................    21
9
        Rebuttal Closing Arguments
10           by Mr. Speirs .........................    26

11      Charge to the Jury
             by the Court ..........................    28
12
        First Inquiry from the Jury ...............    42
13
        *Allen* Charge to the Jury ....................    45
14
        Verdict ...................................    48
15

16

17

18

19

20

21

22

23      Court Reporter's Certificate ..............    52

24

25                          -o0o-


                    **MITCHELL P. REISNER, CM, CRR**
                       **Official U. S. Court Reporter**
                        **Middle District of Alabama**
                            **(334) 265-2500**

```
 1    WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE THE
      HON. W. KEITH WATKINS ON FEBRUARY 5, 2008 AT THE UNITED
 2    STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

 3

 4                          CHARGE CONFERENCE:

 5              THE COURT:  We're in a charge conference.

 6              What says the Government about the proposed jury

 7    charge?

 8              MR. SPEIRS:  The Government is satisfied.

 9              THE COURT:  Okay.  Ms. Connor, I understand you

10    have an objection to the Court excluding your requested

11    charge number four.  What is your objection?

12              MS. CONNOR:  Yes, sir.  It is a circumstantial

13    evidence case.  There is a jury charge which I have provided

14    in the defendant's requested jury charge number four that

15    basic states that the Government has beyond a reasonable

16    doubt to allege facts and circumstances one that are true,

17    and that they are incompatible with any other hypothesis

18    other than that of the guilt of the accused.

19              Your Honor, this is a Alabama State pattern jury

20    charge.  It has been found in our criminal Alabama State

21    books, and it has been given a couple of times over here.

22    However, I do not have an Eleventh Circuit case at hand, but

23    I do believe that this is the law, this is a circumstantial

24    evidence case and that the defendant is entitled to this

25    charge.
```

1          THE COURT:  Okay.  I've heard this charge before in

2    State Court.  I'm not sure that I've ever heard it given, but

3    I know I tried to get it given before.

4          The Court excluded defendant's request to charge

5    number four for a couple of reasons.  First of all, I'm not

6    aware of any Eleventh Circuit case law, as counsel has

7    confessed that she doesn't have any either, that approves

8    this charge.  It's certainly not a pattern charge in the

9    Eleventh Circuit.

10          Secondly, on the fourth line of the charge it says

11    that "the United States must not only show by a preponderance

12    of the evidence and beyond a reasonable doubt," I think

13    that's an incorrect statement of the standard.

14          And, thirdly, the Court objects to this as the way

15    it's phrased as to be construed by the jury and confuses the

16    jury to think that the standard -- that the required burden

17    on the Government is higher than it actually is.

18    Particularly the terms twice, and they're absolutely

19    incompatible.

20          So the Court has denied the defendant's request to

21    charge number for on those grounds.

22          Are there any other objections from the defendant?

23          MS. CONNOR:  No, sir.

24          THE COURT:  All right.  I'd also add that the Court

25    believes that the charges that I have proposed sufficiently

```
 1   point out the law on circumstantial evidence in a case based
 2   on circumstantial evidence, and that the charges as proposed
 3   also properly state the burden of proof on the Government in
 4   this case.
 5           Now, have the parties reviewed the redacted
 6   indictment?
 7           MR. SPEIRS:  I have, Your Honor, and from what I
 8   understand the only thing that is different is just the
 9   forfeiture allegation has been removed, and other than --
10   that it's substantially the same as it was assigned by the
11   grand jury.
12           THE COURT:  Do you object to the jury having this
13   redact the indictment?
14           MR. SPEIRS:  I do not object, Judge.
15           THE COURT:  All right.  And what says the
16   defendant?
17           MS. CONNOR:  Your Honor, I believe that is along,
18   and you do have it in your instructions, that this is just a
19   vehicle to get them here, then we would have no objection.
20           THE COURT:  All right.  The redacted indictment,
21   Ms. Roy, will go to the jury.
22           Now have y'all paid special attention to the
23   verdict form?  I think it's very standard.  I don't see any
24   reason to change it, but I want to be sure that when we get
25   down the road somebody has a problem with it.
```

1           Government have a problem with the verdict form?

2           MR. SPEIRS:  I have no problem with it, Your Honor.

3           THE COURT:  How about the defendant?

4           MS. CONNOR:  No, sir, it's standard, as you pointed

5    out.

6           THE COURT:  All right.  What we do is, we'll take

7    -- well we'll leave some of the headings in, but we take the

8    footnotes out and put them in a readable form.  Each juror

9    will have a copy and we'll get you a copy when Kevin gets

10   them ready so that you can read along with me if you like.

11          At the conclusion of the charge, of course you'll

12   have your opportunity to object, to renew any objections and

13   if I add or delete anything, you can point that out, too.

14          Now the defendant, I understand, has another

15   motion?

16          MS. CONNOR:  Yes, sir.  We are asking that this

17   Court grant the defendant a motion for judgment of acquittal

18   at the close of all of the Government's evidence.  As this

19   Court knows, the Government has to prove that the defendant

20   knowingly possessed a firearm, and that he knowingly

21   possessed ammunition.

22          We had three substantive witnesses and one expert

23   witness.  None of these substantive witnesses could say that

24   they saw him directly have a firearm or directly have live

25   ammunition, Your Honor.  We had -- The only person that said

1    that they saw anything would have been the last police

2    officer, who was Officer Peterson I believe, and he is

3    claiming to have taken the five empty casings from the

4    defendant's pocket.  These casings were found after he had

5    been searched initially by either Officer Warren or Officer

6    Kovacic, I believe.  I'll call him Officer K.  They couldn't

7    decide who actually searched him.

8         You also have the other officer, Officer K, who

9    said that there was one minute between the time that he --

10   the lights went on, they stopped and he was watching the

11   defendant.  He never saw him put live ammunition in the well

12   under the seat.  He never saw the defendant put any gun in

13   the glove box.  He never saw the defendant do anything with a

14   gun.

15        He brings him out, he stands five minutes and yes,

16   he runs.  But Officer K admitted that ex-felons give false

17   names routinely, ex-felons run because they're afraid.  In

18   fact, in your jury charges you tell the jury this cannot be

19   by itself an indication of guilt.  Therefore, we have

20   circumstantial evidence.

21        As you pointed out, there must be a chain.  There

22   must be some type of link between these shell casings, that

23   gun and the live ammunition.  There was no ballistic tests

24   run.  There was nothing to connect these shell casings to the

25   live ammunition.  Therefore, Your Honor, we believe that the

1    Government has failed to meet their burden of proof, and that

2    the defendant is entitled to a motion for judgment of

3    acquittal on the testimony of the three police officers.

4            THE COURT:  Ms. Connor, for the record your motion

5    is out of time.  Do you have an explanation?

6            MS. CONNOR:  Yes, sir.  We were -- This is quite an

7    unusual case.  When the Government rested, we went straight

8    into other business and we started talking about charges and

9    charge conference, what we were going to do with the jury.

10   And quite honestly, Your Honor, it's my fault, I should have

11   brought it to the attention of the Court, but we moved on to

12   other business.

13           I requested this morning of Mr. Speirs that I had

14   screwed up, and he told me he had no objection, that he had

15   done other things of a similar nature.

16           THE COURT:  Thank you.

17           Mr. Speirs, first of all, do you object to this

18   motion being presented to the Court out of time?

19           MR. SPEIRS:  I do not object, Your Honor.

20           THE COURT:  Okay.  To the extent that the Court can

21   allow it out of time, it is allowed.  I haven't looked at the

22   rule this morning, but to the extent it can be allowed it

23   will be aloud.

24           What's your response to the substance of the

25   motion?

1              MR. SPEIRS:  Your Honor, as the Court knows at this
2   point in the proceeding we are to look at the Government's
3   case in the best light, Your Honor.  And that is black letter
4   law.  We're supposed to look at the evidence in the light
5   most favorable to the Government.
6              The evidence that came from the witness stand,
7   Judge, was first, that the defendant was nervous, was very
8   uncomfortable when he was first encountered by the police.
9   He lied to the police on multiple occasions about his name,
10  not just once, Judge, but I believe the testimony was three
11  to four times he gave a false name.  And when he was out of
12  the car, Judge, he ran.  He ran from the police.
13             When he was captured, he had five rounds of
14  thirty-eight caliber ammunition, expended rounds.  Those five
15  rounds are Winchester rounds.  When he was brought back to
16  the police car, they had Winchester rounds that were in a
17  thirty-eight caliber handgun that was directly in front of
18  them, and they also had Winchester thirty-eight caliber
19  rounds that were under his seat, Judge.
20             This is truly, and there is no dispute about it, a
21  circumstantial case, but that is indeed a chain of facts that
22  the jury can decide for themselves whether it leads to the
23  conclusion of guilt, Your Honor.  We have laid out this
24  chain, and it is a circumstantial case but that is a decision
25  for the jury, Your Honor.

1          THE COURT:  Okay.  The Defense motion for judgment

2   of acquittal ruling on it will be reserved.  We'll wait to

3   see what the jury does.

4          One other matter.  Yesterday the Government offered

5   to put on a witness to say in essence that a thirty-eight is

6   a thirty-eight, and that a thirty-eight caliber bullet would

7   fire in a thirty-eight caliber gun, and a thirty-eight

8   caliber shell is what's left of the bullet.  I didn't allow

9   the Government to put on that evidence because one, I think

10  that's common knowledge; and, two, I didn't think it was a

11  proper subject of expert testimony because it is common

12  knowledge.

13         Having said that, Ms. Connor, having not allowed

14  the Government to put on an expert to say that a thirty-eight

15  is a thirty-eight, I don't want you to argue to the jury that

16  nobody has put on any evidence that a thirty-eight is a

17  thirty-eight, if you understand what I'm saying.

18         MS. CONNOR:  Yes, sir.  And I was going to argue

19  that we don't have any ballistic evidence that matches the

20  alleged shells out of his pocket to that gun.

21         THE COURT:  I understand, and the Government didn't

22  offer any evidence.  The Government could not say that the

23  firing pin of this Rossi thirty-eight was the firing pin that

24  hit the shell casings that had been expended.  I don't want

25  you to testify, though, that nobody said that these shells

1    would fit in the a thirty-eight.

2              MS. CONNOR:  Yes, sir.  I understand.

3              THE COURT:  I understand if the Government had

4    produced an expert who said these casings came from this gun,

5    then of course I would have allowed the testimony.  It's kind

6    of a fine point, but without the testimony, I don't want you

7    to argue that nobody said a thirty-eight shell was a

8    thirty-eight to a gun.

9              MS. CONNOR:  Yes, sir.

10             THE COURT:  All right.  Is there anything else.

11             We're a little bit early today, so we're going to

12   take a recess unless there is something else?

13             MR. SPEIRS:  Judge, just so we can argue as was

14   testified by Officer Peterson that those thirty-eight caliber

15   rounds fit a thirty-eight caliber handgun.

16             THE COURT:  Yes, he did testify to that.  Now that

17   may negate everything I said, but I recall that he said that

18   because I wrote it down.

19             MR. SPEIRS:  That we have the five thirty-eight

20   caliber rounds, and that was a five shot gun, and a

21   thirty-eight caliber round fits into a thirty-eight caliber

22   pistol.

23             THE COURT:  And the evidence I thought you were

24   going to present by someone else was cumulative, as I

25   remember that now.

1     MR. SPEIRS:  Yes, sir.  And, Your Honor, and I know

2  the Court has made its ruling on the four oh four B evidence,

3  but if you would indulge me for one second, judge.  I found a

4  D. C. Circuit case this morning, and I know the Court has

5  made its ruling on a number of different grounds, this D. C.

6  Circuit case just says that four oh four B draws no

7  distinction between bad acts committed before and bad acts

8  before after.

9     This *United States vs. Latney*, L-A-T-N-E-Y, and

10  I'll be happy to give my copy to the Court.  It's one oh

11  eight Fed Third fourteen forty-six.  And, Judge, there is the

12  discussion of this issue at head notes four, five and six and

13  also seven and eight, Judge.

14     THE COURT:  Okay.  I don't claim to be an expert on

15  intent, but it's significant to me that the intent to possess

16  a weapon after the charged offense, it seems to me it's not

17  as probative that the other act occurred after the act with

18  which the defendant is charged here.  Had it occurred before

19  the act as charged here, it would be more probative of intent

20  to me than after.  Nevertheless, I find it in a

21  circumstantial case more prejudicial than probative, and

22  that's the foundation of my ruling.

23     MR. SPEIRS:  Yes, sir.  Thank you, Judge.

24     THE COURT:  Thanks you for the copy of the case.

25  I'll read it with interest.

```
 1              MR. SPEIRS:  Thank you, Judge.
 2              THE COURT:  Okay.  Is there anything further?
 3              MR. SPEIRS:  Not from the Government, sir.
 4              MS. CONNOR:  Not from the Defense.
 5              THE COURT:  All right.  I'll give each juror a copy
 6     of the charges and -- How much time do you want for argument?
 7              MR. SPEIRS:  Judge, if we could split our time.
 8     Mr. shepherd is going to do the first close; if we could
 9     perhaps have ten minutes for him and, Judge, maybe I could
10     have five or seven minutes for rebuttal.
11              THE COURT:  Okay.  We'll give you ten and ten.
12              What about you, you want twenty?
13              MS. CONNOR:  No, sir.  Probably about fifteen.
14              THE COURT:  All right.  So the Government will have
15     ten and ten, Ms. Roy, and the defendant will have fifteen
16     two, minute warnings.
17              All right.  We'll be in recess.
18              (Whereupon, a recess was taken.)
19              THE COURT:  Anything further before we bring the
20     jury in?
21              MR. SPEIRS:  Not from the United States, sir.
22              MS. CONNOR:  Not from the Defense, sir.
23              THE COURT:  All right.  Bring them in.
24              (Whereupon, the jury was escorted into the
25     courtroom.)
```

1          THE COURT:  Y'all may be seated.

2          Good morning, ladies and gentlemen.

3          We are now to the point in the trial where the

4    lawyers will argue the case, and then I'll give you the law.

5          Now does anyone have anything, any issues that came

6    up overnight with regard to my special instructions to you

7    about how to conduct yourselves?

8          (Whereupon, there was no response.)

9          THE COURT:  All right.  Well, then I would now ask

10   you to give your attention to the lawyers.  First for the

11   Government.

12                    CLOSING ARGUMENTS:

13         MR. SHEPHERD:  Thank you, Your Honor.

14         May it please the Court?

15         THE COURT:  You may proceed.

16         MR. SHEPHERD:  Ladies and gentlemen, good morning.

17         When my co-counsel, Mr. Speirs, spoke to you

18   yesterday, as part of his presentation he told you that the

19   issue in this case was going to be whether the defendant,

20   Christopher Rush, knowingly possessed this gun and this

21   ammunition.  During the course of the testimony and the trial

22   we've had so far in this case, it's become clear that is the

23   issue that you have to decide.

24         The defendant has stipulated and agreed that he's a

25   convicted felon.  He's been convicted of kidnapping second,

1    theft of property first.  He stipulated and agreed that that

2    gun and that ammunition was not made in the state of Alabama,

3    and it traveled in interstate commerce.  So as Mr. Speirs

4    explained to you yesterday, the three elements that we're

5    going to have to prove to you, two of those three have

6    already been agreed to by the defendant.  He's a convicted

7    felon, and the gun and the ammunition have traveled in

8    interstate commerce.

9         So that just leaves us that third element.  Did the

10   defendant knowingly possess that gun and that ammunition.

11        Also, yesterday, my co-counsel spoke to you a

12   little about direct versus circumstantial evidence.  We

13   concede, and you heard the testimony yesterday, that no

14   witnesses directly saw the defendant with that gun in his

15   hand, or directly saw him with that ammunition in his hand.

16   We admit that.  We concede that.  That's okay.  That would be

17   direct evidence.  Seeing him with the gun in his hand.

18        What we presented to you for you to decide this

19   case is circumstantial case.  A chain of facts that you

20   follow that lead to the conclusion that the defendant

21   knowingly possessed that gun and those bullets.  Where does

22   that chain lead you?  What are the links in that chain.

23        Let's start with the traffic stop.  April

24   twenty-fourth, two thousand search, Officers Warren and

25   Kovacic are on patrol on West Fairview Avenue in Montgomery.

1    They pull a car over for a broken taillight.  The passenger

2    in that car is the defendant, Christopher Rush.  He's sitting

3    in the passenger seat.  And you heard that based on where

4    they found the gun and the bullets, that gun is in the glove

5    box.  The bullets are underneath the seat.

6           He's sitting there within inches of a loaded

7    thirty-special revolver in the glove box.  He's sitting on

8    top of thirty-eight caliber ammunition underneath him in the

9    seat.  You heard the testimony that based on that car, he

10   could easily reach the ammunition.  He could open that glove

11   box, and that gun was right there in front of him.  The ammo

12   right beneath him.  Those are the facts of where he was

13   situated and where this evidence was situated when he was

14   pulled over.

15          Then when they stopped the car, consider the

16   defendant's actions.  The officers both told you he appeared

17   nervous.  He's the passenger in the car, remember, not the

18   driver.  At this point as the passenger, what does he have to

19   be nervous about?  He didn't commit any traffic violations.

20   He's just sitting in the car.

21          He also then gives him false identification, a fake

22   name.  They ask him who he is.  A very standard question for

23   a police officer to ask.  Who are you?  He repeatedly tells

24   them he's somebody he isn't.  Ask yourself why he's doing

25   that.

1          Then as this traffic stop is going on, the

2    defendant, he takes off running.  I want to stop here for a

3    minute and consider the nervousness, the fake name, the

4    running and as to why he would do that.  Police officers also

5    explained to you they didn't find any drugs in his car.  They

6    didn't find any other contraband in the car.  When they found

7    out who he really was, they determined he didn't have any

8    warrants for his arrest.  He wasn't wanted for anything.  So

9    the man who is the passenger in a car that's pulled over for

10   a broken taillight starts getting nervous, gives fake names

11   and takes off running, why would he do that?

12          He doesn't have any other contraband with him.

13   He's not wanted for anything.  The only logical explanation

14   for why somebody would run in that situation is that he knew

15   that gun was in that glove box inches away, and he was

16   sitting on top of the ammunition.  And he knew that as a

17   convicted felon, he wasn't allowed to have those.  That's the

18   logical inference to make from his actions.

19          And think about this.  He's a convicted felon.

20   He's been through the system before.  He's clearly been

21   arrested before.  Somebody who has been through the system

22   before and wants to avoid further contact with the police

23   when he's pulled over, what's the quickest way to draw

24   attention to yourself?  It's to take off running.  It's to

25   give them a false name.

1         If you're trying to avoid attention from the
2   police, why are you going to take those actions when you know
3   nothing in the car could get you in trouble?  The only reason
4   you're going to do those things is because you're worried
5   about what you know is in that car that can get you in
6   trouble.  So consider that.

7         I'll follow that chain a step further.  He's
8   apprehended by Officer Peterson.  You heard Officer Peterson
9   tell you that when the defendant was apprehended a few
10  minutes, later he conducted a patdown search.  He described
11  how he did that.  In the course of that patdown search he
12  found five expended shell casings.  Now there's been some
13  disagreement among the first officers about whether -- who
14  had done the patdown initially because they both admitted
15  those shells weren't found when he was first pulled over and
16  they first looked at him.  Well, just consider that it was
17  April, two thousand seven.  It's not quite a year.  Memories
18  may be slightly different.

19        Also consider that at night conducting a quick
20  patdown of the passenger, who at the time you may have no
21  reason to really be that concerned about, you're looking for
22  a weapon such as this and you miss in a pocket some little
23  shell casings.  Little shell casings aren't what you're
24  looking for in that situation, it's a gun, it's a knife, it's
25  something that can do immediate harm to you.

1          Officer Peterson, when he does his patdown, he

2    clearly does a more thorough job.  But there is no dispute

3    that Officer Peterson, when he apprehends the defendant and

4    brings him back to the site of that traffic stop, he's got

5    those shell casings.  And he told you he pulled them out of

6    the defendant's pocket.  He wasn't part of the initial stop.

7    His only role in this incident was to apprehend the defendant

8    and bring him back.  And he told you he found those shell

9    casings in the defendant's pocket.

10          There's no reason not to believe him.  There's no

11   reason not to believe that that's indeed where those shell

12   casings came from.  Christopher Rush's pocket.  When you look

13   at this evidence, if you look at the shell casings, the gun

14   and the live rounds together, I want you to take them when

15   you're back in the deliberation room and actually look at

16   them.

17          First, take a look at this gun.  It's set on safe

18   so it can't be loaded or fired, but you open up the action

19   here.  You've got five rounds that fit into the cylinder.

20   Count them up, five rounds.  A thirty-eight special revolver.

21          Next, take the shell casings, the empty five shell

22   casings that were found on the defendant.  Count them up.

23   There are, indeed, five here.  When you hold them up next to

24   this revolver, you've got five shell casings that fit

25   perfectly into the five chambers of the cylinder.

```
1              COURTROOM DEPUTY CLERK:  Two minutes.

2              MR. SHEPHERD:  And look at these shell casings.  On

3     the back, each one says "Winchester thirty-eight special".

4              Next, take these bullets.  The testimony was that

5     five of these bullets were found in that gun.  Look at the

6     make of these bullets.  There are twelve in this package.

7     Ten of them are Winchester thirty-eight special, the same

8     engraving on the back as on those five empty shell casings.

9              And think in conjunction with all of these what

10    would somebody do who had fired all five rounds?  What would

11    they do?  They would take the five empty ones out.  They

12    would put them in the pocket if they didn't want to leave

13    them on the ground.  They put five new ones in.  And if they

14    had a handful of ammunition in another pocket or with them

15    somewhere, what would they load?  They would load what they

16    grabbed, and they would probably have the same type of

17    ammunition as they were taking out.  That makes sense,

18    doesn't it?

19             And that's what you have in this case.  That's the

20    final link in the chain.  You can follow that.  The

21    ammunition that was found in the car, the gun, the shell

22    casings, they all match.  Not ballistically, we admit there

23    is no ballistic test.  They all match.  Use your common

24    sense.  Is it a mere coincidence that the defendant was

25    riding in a car sitting on top of live rounds inches away
```

1    from a loaded pistol?  Is it a mere coincidence he gives a

2    false name and runs from the police when he's not wanted for

3    anything and there is no contraband found?  Is it a mere

4    coincidence that when he's captured he has five shell

5    casings, the same caliber, number and brand as the ammunition

6    found in the car and in that gun?  The ammunition was the

7    same brand and number as the in the number.

8           It's clear that the chain leads to one conclusion.

9    Using your common sense, your experience, your reason, it

10   leads to the conclusion that the defendant, Christopher Rush,

11   knowingly possessed that gun and those bullets on April

12   twenty-four, two thousand seven and he's guilty as charged.

13          Thank you.

14          THE COURT:  Ms. Connor?

15                      CLOSING ARGUMENTS:

16          MS. CONNOR:  If it please the Court?  Counsel?

17          Ladies and gentlemen, when I stood up here in front

18   of you yesterday, both myself and Mr. Speirs told you that

19   this case was going to revolve around Christopher Rush, did

20   he knowingly possess the firearm.  Did he knowingly possess

21   the ammunition.  The Government, and Mr. Shepherd in his

22   closing, asked you to make an inference, to make a jump, to

23   make an assumption that Mr. Rush possessed the firearm and

24   that Mr. Rush possessed the ammunition.  We cannot in our

25   system of justice convict someone of a crime based on an

1    inference, based on an assumption.

2         The Government has conceded there is no direct

3    evidence at all.  That that gun, or that ammunition was

4    handled or possessed by Christopher Rush.  We had the three

5    police officers yesterday.  Those are the ones I'm going to

6    call the substantive witnesses.  We also had Ron McCoy.  Ron

7    is an expert, okay?

8         Let's start with Warren.  What did Mr. Warren tell

9    y'all from the stand?  He told y'all that his partner, is it

10   Kovacic I believe -- I mispronounce that word, I'm going to

11   call him Officer K -- that he is the one that searched Chris

12   Rush.  And at the time that, according to Warren, that they

13   searched Chris Rush, he told y'all first that they took

14   twelve live rounds of ammunition out of his pocket.  Only on

15   cross examination when I gave him his statement did he say

16   oh, I'm sorry, I must have been mistaken.  We didn't take any

17   live rounds.  We didn't find anything when we patted him down

18   and we searched him.

19        He talks about Chris giving a false name.  Chris

20   will admit he gave a false name.  But when this Court gives

21   you the charge, and he will be giving you a jury charge, he

22   will tell you that you may not infer on the basis alone that

23   someone gave a false name, that the defendant is in fact

24   guilty of the charge, of the crime he is charged with.  You

25   cannot base, according to the judge's jury charge, the fact

1   alone that Chris gave them a false name as to whether or not

2   he's guilty or innocent of knowingly possessing the firearm.

3           The judge will also tell you that when Chris Rush

4   ran, evidence of flight, he will read you a jury charge.

5   He's going to give y'all a package of this to take back with

6   you.  He will tell you regarding the flight, the evidence of

7   the running, "You are specifically cautioned that evidence of

8   flight of a defendant may not be used by you as a substitute

9   for proof of guilt.  Flight does not create a presumption of

10  guilt."

11          This Court, and our justice system, in order to be

12  found guilty of a crime you have to be convicted with proof

13  beyond a reasonable doubt.  That's a pretty heady standard

14  that the Government has got to make.  You have got to be

15  found guilty with proof beyond a reasonable doubt.  The judge

16  is going to tell you a reasonable doubt is a real doubt based

17  upon reason and common sense after careful and impartial

18  consideration of all the evidence in this case.

19          What evidence in this case have they given you that

20  Chris Rush possessed, knowingly had in his possession that

21  gun and the live rounds of ammunition?  Mr. shepherd said we

22  must make a link.  We must take link by link by link.  Ladies

23  and gentlemen, I tell you they don't have links in their

24  chain to take you from the gun to Chris Rush under

25  circumstantial evidence.

1          Did they bring you in a firearms expert to say I
2     examined these spent rounds, and these spent rounds that were
3     allegedly found in his pocket match the firing pin in this
4     gun?  No, ladies and gentlemen, they didn't.  Did they bring
5     to you fingerprint evidence to say yes, we processed this
6     firearm for fingerprints, we processed these bullets for
7     fingerprints?  They didn't even submit them.

8          They brought Ron McCoy in -- and Ron has been
9     around our judicial system here locally for many years -- to
10    talk about raising prints, to talk about how you get prints
11    off a gun that's been blued.  How you get the different
12    things that latent print can or can't be done.  But what did
13    Ron tell y'all?  It was not impossible.  It could have been
14    done, but they didn't do it, ladies and gentlemen.

15         We don't have any ballistics evidence.  We don't
16    have any fingerprint evidence.  We don't have anyone that
17    directly saw Chris Rush with this gun.  Remember when I asked
18    Officer Kovacic, he had been on the San Antonio Police
19    Department for twenty years before he came here to
20    Montgomery.  It's not unusual for ex-felons to get nervous.
21    It's not unusual for people that have been in the system to
22    run.  He told y'all that.  That is not unusual at all.  Yes,
23    it was stupid, and I told Chris in the past it was stupid,
24    but that is something that happens, ladies and gentlemen.
25    And according to the judge's charge it can't be used to

1    determine his guilt in this case.

2              Ladies and gentlemen, they don't have any links in

3    their circumstantial evidence.  Verne gave you the law school

4    example yesterday of circumstantial evidence as snow.  It's

5    snowing outside.  You get up the next morning and you see the

6    rabbit tracks.  That's law school one oh one.  They all tell

7    you about the rabbit tracks.  Ladies and gentlemen, I submit

8    in this circumstantial case we don't even have the rabbit.

9    There are no rabbit tracks.  There is no link between that

10   gun, the live ammunition and Christopher Rush.  Therefore,

11   ladies and gentlemen, the only verdict that you can come back

12   with is a verdict of not guilty to count one, possessing the

13   gun; not guilty to count two, possessing the ammunition.

14             I'm sure that you would not want your life and your

15   liberty placed in jeopardy on an inference or a surmise.  In

16   our justice system you must have more evidence than just an

17   inference or a surmise.  Again, I'm asking you to return a

18   verdict, ladies and gentlemen, of not guilty to both counts

19   one and count two.

20             It's my turn to sit down and be quiet now.  Verne

21   has one more opportunity to address this jury.  And I'm sure

22   as an attorney at some point you would have hoped that you

23   could have stood up after final closing and said something

24   else, but I can't.  I do hope that you will remember the

25   evidence, the lack of evidence, what we don't have in this

1    case.  And, again, return a verdict of not guilty against

2    Christopher Rush.

3              Thank you, ladies and gentlemen.

4                        REBUTTAL CLOSING ARGUMENTS:

5              THE COURT:  Mr. Speirs?

6              MR. SPEIRS:  May it please the Court?

7              Ladies and gentlemen of the jury, we embrace our

8    burden of beyond a reasonable doubt.  That is the appropriate

9    burden for the Government to have.  That is our burden, and

10   we take it and it's ours and we welcome it and we would never

11   ask you to reach a decision with anything less than beyond a

12   reasonable doubt.  And we told you up front that this was a

13   circumstantial case.  And it is a circumstantial case.  And

14   although she's not on television, she's better than the

15   lawyers that they have on TV that disparage the Government's

16   case with that old adage of it's nothing but a circumstantial

17   case, as they have on *Law and Order* with Mr. McCoy.

18             We would never ask you to do anything that does not

19   have facts that support what we have.  But, ladies and

20   gentlemen, we have facts and we have a trail.  And the trail

21   leads to guilt for Mr. Rush.

22             What are the facts?  What is the trail?  The first

23   one is he was stopped in a car and he's nervous.  Okay?  That

24   is something you can consider.  That is one step in the link.

25   He's nervous, okay?  That's a step in the link of

1    circumstantial evidence.  Okay?  The next thing is he lies.
2    He lies not just once, he lies a bunch of times about who he
3    is.  They pull him out of the car.  What's the next thing
4    that happens?  He runs.  That's another step in the chain.
5    He runs away.
6           Now you heard them say, and as my co-counsel
7    pointed out, they didn't know he was wanted for anything.
8    All they knew that he was just a passenger in the car.  Okay?
9    What's the next thing that happens?  They find him and he's
10   got thirty-eight caliber rounds in his hip pocket.  And they
11   take him back to the car and what do they find?  A
12   thirty-eight caliber handgun.  This thirty-eight caliber
13   handgun in the glove compartment.
14          What's the next step in the chain?  What's the next
15   thing that leads you down this trail to a decision of guilt?
16   Thirty-eight caliber rounds.  Thirty-eight caliber rounds
17   that are Winchester rounds.  And what do we have?  Winchester
18   rounds.
19          Ladies and gentlemen, we would never ask you to
20   decide a case if there wasn't a basis for the decision in
21   fact.  And the facts are as I laid out on the bar right here,
22   you can go from step one all the way to the end of this case
23   and the decision that -- and the only thing that the evidence
24   shows is that the defendant, who is a convicted felon for
25   kidnapping and theft, was in possession of these bullets and

1   of this gun.

2          And why did he run, ladies and gentlemen?  Why did

3   he run?  And he knows that if he is sitting on those bullets

4   and if he has this gun in the glove compartment, it is

5   Kryptonite to him, ladies and gentlemen.  That's why he ran.

6          Ladies and gentlemen we have put out the evidence

7   before you.  There is a link for every step of the chain.  It

8   is a circumstantial case, and we have provided you with the

9   trail that leads to guilty.

10          Thank you.

11                    CHARGE TO THE JURY:

12          THE COURT:  Members of the jury, it's now my duty

13   to instruct you on the rules of law that you must follow and

14   apply in deciding this case.

15          I'm going to ask the courtroom deputy to please

16   hand out a copy of my jury instructions so you can read

17   along.  I want to ask you to read along with me.  Don't read

18   ahead, because it just goes better if you stay right where I

19   am in the instructions.  It will make more sense to you.

20          When I finish, you'll go to the jury room and begin

21   your discussions, what we call your deliberations.  It will

22   be your duty to decide whether the Government has proved

23   beyond a reasonable doubt the specific facts necessary to

24   find the defendant guilty of the crimes charged in the

25   indictment.  You must make your decision only on the basis of

1    the testimony and other evidence presented here during the

2    trial, and you must not be influenced in any way by either

3    sympathy or prejudice for or against the defendant or the

4    Government.

5         You must also follow the law as I explain it to

6    you, whether you agree with that law or not, and you must

7    follow all of my instruction as a whole.  You may not single

8    out or disregard any of the Court's instructions on the law.

9         The indictment, or formal charge against any

10    defendant, is not evidence of guilt.  Indeed, every defendant

11    is presumed by the law to be innocent.  The law does not

12    require a defendant to prove innocence or to produce any

13    evidence at all.  If the defendant elects not to testify, you

14    cannot consider that in any way during your deliberations.

15    The Government has the burden of proving a defendant guilty

16    beyond a reasonable doubt, and if it fails to do so you must

17    find that defendant not guilty.

18         Thus, while the Government's burden of proof is a

19    strict or heavy burden, it is not necessary that a

20    defendant's guilt be proved beyond all possible doubt.  It is

21    only required that the Government's proof exclude any

22    reasonable doubt concerning the defendant's guilt.

23         A "reasonable doubt" is a real doubt based on

24    reason and common sense after careful and impartial

25    consideration of all of the evidence in the case.  "Proof

1    beyond a reasonable doubt," therefore, is proof of such a

2    convincing character that you would be willing to rely and

3    act upon it without hesitation in the most important of your

4    own affairs.  If you are convinced that the defendant has

5    been proven guilty beyond a reasonable doubt, say so.  If you

6    are not convinced, say so.

7           As I said earlier, you must consider only the

8    evidence that I've admitted in the case.  The term "evidence"

9    includes the testimony by the witnesses and the exhibits

10   admitted in the record.  Remember that anything that the

11   lawyers say is not evidence in the case.  It is your own

12   recollection and interpretation of the evidence that

13   controls.  What the lawyers say is not binding upon you.

14           Also, you should not assume from anything I may

15   have said that I have any opinion concerning any of the

16   issues in this case.  Except for my instructions to you on

17   the law, you should disregard anything I may have said during

18   the trial in arriving at your decision concerning the facts.

19   In considering the evidence you may make deductions and reach

20   conclusions which reason and common sense lead you to make,

21   and you should not be concerned about whether the evidence is

22   direct or circumstantial.

23           "Direct evidence" is the testimony of one who

24   asserts actual knowledge of a fact, such as an eyewitness.

25   "Circumstantial evidence" is proof of a chain of facts and

1    circumstances tending to prove or disprove any fact in

2    dispute.  The law makes no distinction between the weight you

3    may give to either direct or circumstantial evidence.

4            Now in saying that you must consider all of the

5    evidence I do not mean that you must accept all the evidence

6    as true or accurate.  You should decide whether you believe

7    what each witness had to say and how important that testimony

8    was.  In making that decision you may believe or disbelieve

9    any witness in whole or in part.  Also, the number of

10   witnesses testifying concerning any particular dispute is not

11   controlling.

12           In deciding whether you believe or do not believe

13   any witness I suggest you ask yourself a few questions.

14           Did the witness impress you as one who was telling

15   the truth?

16           Did the witness have any particular reason not to

17   tell the truth?

18           Did the witness have a personal interest in the

19   outcome of the case?

20           Did the witness seem to have a good memory?

21           Did the witness have the opportunity and ability to

22   observe accurately the things he or she testified about?

23           Did the witness appear to understand the questions

24   clearly and answer them directly?

25           Did the witness's testimony differ from other

1    testimony or other evidence?

2         You should also ask yourself whether there was

3    evidence tending to prove that a witness testified falsely

4    concerning some important fact or whether there was evidence

5    that at some other time a witness said or did something, or

6    failed to say or do something which was different from the

7    testimony of the witness during the trial.  You should keep

8    in mind, of course, that a simple mistake by a witness does

9    not necessarily mean that the witness was not telling the

10   truth as he or she remembers it because people naturally tend

11   to forget some things or remember other things inaccurately.

12        So if a witness has made a misstatement, you need

13   to consider whether it was simply an innocent lapse of memory

14   or an intentional falsehood.  And the significance of that

15   may depend on whether it has to do with an important fact or

16   only an unimportant detail.

17        When knowledge of a technical subject matter might

18   be helpful to the jury, a person having special training or

19   experience in that technical field is permitted to state an

20   opinion concerning those technical matters.  If a witness has

21   expressed such an opinion does not mean that you must accept

22   that opinion.  The same is as with any other witness, it is

23   up to you to decide whether to rely on be it.

24        In this case you have been permitted to take notes

25   during the course of the trial, and some of you, if not all

1    of you, have taken advantage of that opportunity and have

2    made notes from time to time.  You'll have your notes

3    available to you during your deliberations, but you should

4    make use of them only as an aid to your memory.  In other

5    words, you should not give your notes any precedence over

6    your independent recollection of the evidence or the lack of

7    evidence.  And neither should you be unduly influenced by the

8    notes of other jurors.

9            I emphasize the notes are you not entitled to any

10   greater weight than the memory or impression of each juror as

11   to what the testimony may have been.

12           Title Eighteen United States Code, Section nine

13   twenty-two G makes it a federal crime or offense for anyone

14   who has been convicted of a felony offense to possess any

15   firearm in or affecting interstate commerce.  The defendant

16   can be found guilty of that offense only if all of the

17   following facts are proved beyond a reasonable doubt.  First,

18   that the defendant knowingly possessed a firearm in and

19   affecting interstate commerce as charged; and, second, that

20   before the defendant possessed the firearm the defendant had

21   been convicted in a court of a crime punishable by

22   imprisonment for a term in excess of one year, that is a

23   felony offense.

24           The term "firearm" means any weapon which is

25   designed to or may readily be converted to expelling a

1    projectile by the action of an explosive.  And the term

2    includes the frame or receiver of any such weapon or any

3    firearm muffler or firearm silencer.

4            The term "interstate commerce" includes the

5    movement of a firearm between any place in one state and any

6    place in another state.  It is not necessary for the

7    Government to prove that the defendant knew that the firearm

8    had moved in interstate commerce before the defendant

9    possessed, only that it had made such movement.

10           In this case the Government and the defendant have

11   stipulated that the firearm has moved in interstate commerce,

12   and the defendant has previously been convicted of a crime

13   punishable by imprisonment for a term in excess of one year;

14   that is, a felony offense as charged in the indictment.

15           Title Eighteen United States code, Section nine

16   twenty-two G makes it a federal crime or offense for anyone

17   who has been convicted of a felony offense to possess any

18   ammunition in or affecting interstate commerce.  The

19   defendant can be found guilty of that offense only if all the

20   following facts are proved beyond a reasonable doubt.  First,

21   that the defendant knowingly possessed ammunition in or

22   affecting interstate commerce as charged; and, second, that

23   before the defendant possessed ammunition, the defendant had

24   been convicted in a court of a crime punishable by

25   imprisonment for a term in excess of one year, that is a

1    felony offense.

2            In this case the Government and the defendant have

3    stipulated that the ammunition has moved in interstate

4    commerce, and that the defendant has previously been

5    convicted of a crime punishable by imprisonment for a term in

6    excess of one year; that is a felony offense as charged in

7    the indictment.

8            There has been evidence that the defendant may have

9    used a false name.  If you find that the defendant knowingly

10   used a name other than his own in order to conceal his

11   identity and to avoid identification, you may, but are not

12   required to, infer that the defendant believed that he was

13   guilty.  You may not, however, infer on the basis of this

14   alone that the defendant is in fact guilty of the crime for

15   which he is charged.  Whether or not evidence of the use of

16   the false name shows that the defendant believed he was

17   guilty and the significance, if any, to be attached to that

18   evidence are matters for you to determine.

19           You have heard evidence that the defendant fled

20   after he believed he was about to be charged with committing

21   a crime for which he's now on trial.  If proved, the flight

22   of the defendant after he knows he is to be accused of a

23   crime may tend to prove that the defendant believed that he

24   was guilty.  It may be weighed by you in this connection

25   together with all other evidence.  However, flight may not

1    always reflect the feelings of guilt.

2        Moreover, feelings of guilt which are present in

3    many innocent people do not necessarily reflect actual guilt.

4    You're specifically cautioned that evidence of flight of a

5    defendant may not be used by you as a substitute for proof of

6    guilt.  Flight does not create a presumption of guilt.

7    Whether or not evidence of flight does show that the

8    defendant believed that he was guilty and the significance if

9    any to be given to the defendant's feelings on this matter

10    are for you to determine.

11        The law recognizes several kinds of possession.  A

12    person may have actual possession or constructive possession.

13    The person may also have sole possession or joint possession.

14    A person who knowingly has direct physical control of

15    something is then in actual possession of it.  The person who

16    is not in actual possession but who has both the power and

17    intention to later take control of something, either alone or

18    with someone else, is in constructive possession of it.

19        If one person alone has possession of something,

20    that possession is sole.  If two or more persons share such

21    possession, such possession is joint.

22        Whenever the word "possession" has been used in

23    these instructions, it includes constructive as well as

24    actual possession, and also joint as well as sole position.

25        When knowledge of a the existence of a particular

1    fact is an essential part of an offense, such knowledge may

2    be established if the defendant is aware of a high

3    probability of its existence unless the defendant actually

4    believes it does not exist.

5         So with respect to the issue of the defendant's

6    knowledge in this case, if you find from all the evidence

7    beyond a reasonable doubt that the defendant believed he

8    possessed a firearm or ammunition and deliberately and

9    consciously tried to avoid learning of any firearm or

10   ammunition, you may treat such deliberate avoidance of

11   positive knowledge as the equivalent of knowledge.  In other

12   words, you may find that a defendant acting knowingly, if you

13   find beyond a reasonable doubt either one, that the defendant

14   actually knew that he possessed a firearm or ammunition, or

15   two, that he deliberately closed his eyes to what he had

16   every reason to believe was the fact.

17        I must emphasize, however, that the requisite proof

18   of knowledge on the part of the defendant cannot be

19   established by merely demonstrating that the defendant was

20   negligent, careless or foolish.

21        You will note that the indictment charges that the

22   offense was committed on or about a certain date.  The

23   Government does to the have to prove with certainty the exact

24   date of the alleged offense.  It is sufficient that the

25   Government proves beyond a reasonable doubt that the offense

1    was committed on a date reasonably near the date alleged.

2            The word "knowingly" as that term has been used in

3    the indictment or in these instructions means that the act

4    was done voluntarily and intentionally and not because of

5    mistake or accident.

6            A separate crime or offense is charged in each

7    count of the indictment.  Each charge and the evidence

8    pertaining to it should be considered separately.  The fact

9    that you may find the defendant guilty or not guilty as to

10   one of the offenses charged should not affect your verdict as

11   to the other offense charged.  I caution you, members of the

12   jury that you are here to determine from the evidence in this

13   case whether the defendant is guilty or not guilty.  A

14   defendant is on trial only for those specific offenses

15   alleged in the indictment.

16           Also, the question of punishment should never be

17   considered by the jury in any way in deciding the case.  If

18   the defendant is convicted, the matter of punishment is for

19   the judge alone to determine later.

20           Any verdict you reach in the jury room, whether

21   guilty or not guilty, must be unanimous.  In other words, to

22   return a verdict, you must all agree.  Your deliberations

23   will be secret.  You will never have to explain your verdict

24   to anyone.  Is it your duty as jurors to discuss the case

25   with one another in an effort to reach agreement if you can

1    do so.  Each of you must decide the case for yourself, but

2    only after full consideration of the evidence with the other

3    members of the jury.

4         While you are discussing the case do not hesitate

5    to reexamine your own opinion and change your mind if you

6    become convinced that you were wrong, but do not give up your

7    honest beliefs solely because the others think differently or

8    merely to get the case over with.  Remember, that in a very

9    real way you are judges, judges of the facts.  Your only

10   interest is to seek the truth from the evidence in the case.

11        When you go to the jury room you should first

12   select one of your members to act as your foreperson.  The

13   foreperson will preside over your deliberations and will

14   speak for you here in court.  A form of verdict has been

15   prepared for your convenience.  I'm giving you one of these,

16   and I'll have Ms. Roy hand it to the gentleman in the front

17   corner because he's the closest up here, to take it back with

18   you.

19        The form is simple.  It has two numbers, and the

20   first number says "As to the charge contained in count one of

21   the indictment we, the jury, find the defendant" either

22   guilty or not guilty.  And you'll check one of those blanks.

23   The second paragraph says, "As to the charge contained in

24   count two of the indictment we, the jury, find the defendant"

25   not guilty or guilty, and you'll check one of those.

1              You'll return a verdict on both counts, and then

2     your foreperson will date and sign the verdict form.

3              You'll take the verdict form to the jury room, and

4     when you have reached unanimous agreement you will have your

5     foreperson fill in the verdict form, date and sign it and

6     return it to the courtroom.

7              If you should desire to communicate with me at any

8     time please write down your message or question and pass the

9     note to the marshal who will bring it to my attention.  I

10    will then respond as promptly as possible either in writing

11    or by having you returned to the courtroom so that I can

12    address you orally.  I caution you, however, with regard to

13    any message or question you might send that you should not

14    tell me your numerical division at the time.

15             That concludes my charge.

16             Will counsel please approach.

17             (Whereupon, the following bench conference was held

18    between all counsel and the Court):

19             THE COURT:  Are there any objections to the charge?

20             MR. SPEIRS:  Not from the Government, Judge.

21             THE COURT:  Any objections from the defendant?

22             MS. CONNOR:  Only as previously stated as to

23    defendant's charge number four.

24             THE COURT:  It's noted and is in the record.  The

25    ruling would be the same.

1          MS. CONNOR:  Yes, sir.

2          THE COURT:  Thank you.

3          (Whereupon, the bench conference was concluded.)

4          THE COURT:  Ladies and gentlemen, Ms. Roy will see

5  to it that you have a copy of the indictment and the verdict

6  form.

7          And now I have the duty to identify the alternate.

8  There are thirteen of you.  I always allow the alternate to

9  sit through the jury charge in case something happens during

10  deliberations and he or she has to come back in and join the

11  deliberations so we don't have to recharge the jury.  In this

12  case, Larry Keith Jackson is the alternate.  Who would that

13  be?  Mr. Jackson, you'll not go in with the jury for their

14  deliberations, but the Court would appreciate you staying

15  around in the jury assembly room, and we will call you as

16  soon as we know something and in case we need you we wouldn't

17  have to call you back.  Okay?  And thank you for serving.

18          Now, Ms. Roy, anything else we need to do?

19          COURTROOM DEPUTY CLERK:  No, sir.

20          THE COURT:  Okay.  Ladies and gentlemen, the case

21  is yours.  You may now deliberate.

22          Mr. Jackson, if you'd sit tight downstairs we'll

23  get back with you.

24          (Whereupon the jury was escorted out of the

25  courtroom to enter into its deliberations at nine forty-five

```
 1   a.m.)
 2                    JURY QUESTION AT ELEVEN-THIRTY FIVE A.M.:
 3                        (THE JURY IS NOT PRESENT):
 4            THE COURT:  I have a message from the jury.  It is
 5   eleven-forty on February the fifth.  "We have decided we are
 6   a hung jury.  What shall we do next?  There is no choice on
 7   the verdict sheet."  Signed by, apparently, Eugene Zigler,
 8   foreperson.
 9            What says the Government?
10            MR. SPEIRS:  Your Honor, could I have two seconds
11   just to confer with my counsel?
12            THE COURT:  You may.
13            (Whereupon, Mr. Speirs conferred with Mr. Shepherd
14   off the record and out of the hearing of the other courtroom
15   participants.)
16            MR. SPEIRS:  Your Honor, after conferring with my
17   co-counsel, it's the Government's position that if they're a
18   hung jury, that rather than give the *Allen* charge, and from
19   the indication it seems from the Court that they cannot reach
20   a decision, that we declare a mistrial and that we go at it
21   again whenever the next term of court would be, Your Honor.
22            THE COURT:  What says the defendant?
23            MS. CONNOR:  Your Honor, we've spent a lot of time,
24   money and effort.  I would like this Court to give them the
25   *Allen* charge and see if we can have a resolution.
```

1          THE COURT:  Well, I'm not going to inquire what

2    their numerical breakdown is or what the issues might be that

3    divide them, but I don't think they have tried hard enough

4    yet so I'm inclined in my discretion to give them the *Allen*

5    charge.  I have my clerk making copies of the proposed *Allen*

6    charge to give you in just a moment.

7          Ms. Roy, go check with the jury to see if they want

8    to take a lunch break.  Tell them --

9          COURTROOM DEPUTY CLERK:  They have already told me.

10   They're hungry and they want pizza.

11         THE COURT:  Oh, they want us to bring them pizza?

12         MS. CONNOR:  I'll chip in twenty.

13         COURTROOM DEPUTY CLERK:  They were specific.

14         THE COURT:  Well, okay.  Then what we'll do is

15   let's go ahead and send them to lunch, and tell them that I

16   will have some words to say to them when they get back from

17   lunch at one o'clock.  Be ready to go at one o'clock.

18         (Whereupon, a recess was taken.)

19         THE COURT:  All right.  I've given each of you a

20   proposed *Allen* charge.

21         What says the Government?

22         MR. SPEIRS:  Your Honor, it doesn't say it but I

23   assume it's right out of the Eleventh Circuit pattern

24   instruction?

25         THE COURT:  I think it is.  I think it's modified a

1  little bit, but I don't know how.  Of course you can look at

2  it during lunch.  I won't give it until after lunch.  But do

3  you see anything on the face of it that's objectionable to

4  the Government?

5        MR. SPEIRS:  Not on the face of it, Judge, but I

6  need to look at the Eleventh Circuit pattern instruction, and

7  I'd reserve any objection until I look at the Eleventh

8  Circuit pattern.

9        THE COURT:  That's fine.

10        How about the defendant?

11        MS. CONNOR:  We have no objection.  It looks to me

12  to be a typical *Allen* charge.

13        THE COURT:  All right.  We'll meet back here at

14  about five to the hour, and if you have any objections, I'll

15  hear it then.

16        (Whereupon, the luncheon recess was taken.)

17                    IN OPEN COURT

18              (THE JURY IS NOT PRESENT):

19        THE COURT:  Okay.  We're back on the record.  I'll

20  bring the jury in for the proposed *Allen* charge.

21        The Government reserved the right to object to the

22  charge.  What says the Government now?

23        MR. SPEIRS:  Your Honor, it is right out of the

24  Eleventh Circuit pattern book.  So with regard to the charge

25  itself, we have no problem with it.  We would just note for

1    the record that as previously stated that if the Court were

2    to grant a mistrial in this case rather than the *Allen*

3    charge, that would be amenable to the Government, Judge.

4            THE COURT:  All right.  The Court has considered

5    that and deems it appropriate at this time to give the *Allen*

6    charge.

7            I also have filed here from Tommy Hardwick

8    documents number thirty-nine and forty, the United States

9    motion to substitute counsel and motion to strike forfeiture

10   allegation.  And the proposed order was filed.  The Court

11   will grant the motion for substitute counsel and will grant

12   the motion to strike the forfeiture allegation and we'll

13   enter an order to that effect.

14           MR. SPEIRS:  Thank you, Your Honor.

15           THE COURT:  Anything else?

16           MR. SPEIRS:  Not from the United States.

17           MS. CONNOR:  No, sir.

18           THE COURT:  Well, Ms. Roy, when the jury is ready

19   I'm ready.

20                  *ALLEN* CHARGE TO THE JURY:

21           (Whereupon, the jury was escorted into the

22   courtroom and the following colloquy ensued):

23           THE COURT:  Okay.  Y'all can have a seat.

24           Ladies and gentlemen, I have your report that you

25   feel like you can't come to a verdict in this case.  I'm

1  going to ask you to continue your deliberations in an effort

2  to reach agreement upon a verdict and dispose of the case,

3  and I have a few additional comments I'd like for you to

4  consider as you do so.

5          This is an important case.  The trial has been

6  expensive in time, effort, money and emotional strain to both

7  the Defense and Prosecution.  If you should fail to agree

8  upon a verdict, the case will be left open and may have to be

9  tried again.  Obviously, another trial would only serve to

10  increase the cost to both sides and there is no reason to

11  believe that the case can be tried again by either side any

12  better or more exhaustively than has been tried before you.

13          Any future jury must be selected in the same manner

14  from the same source as you were chosen, and there is no

15  reason to believe that the case would ever be submitted to

16  twelve men or women more conscientious or impartial or more

17  competent to decide it, or if more or clearer evidence could

18  be produced.

19          If a substantial majority of your number are in

20  favor of a conviction, those of you who disagree should

21  reconsider whether your doubt is a reasonable one since it

22  appears to make no objective impression on the minds of the

23  others.  On the other hand, if the majority or even a lesser

24  of you are in favor of an acquittal, the rest of you should

25  ask yourselves again, and most thoughtfully, whether you

1    should accept the weight and sufficiency of the evidence

2    which fails to convince your fellow jurors beyond a

3    reasonable doubt.

4            Remember at all times that no juror is expected to

5    give up an honest belief he or she may have as to the weight

6    or effect of the evidence.  But after full deliberation and

7    consideration of the evidence in the case, it is your duty to

8    agree upon a verdict if you can do so.  You must also

9    remember that if the evidence in the case fails to establish

10   guilt beyond a reasonable doubt, the defendant should have

11   your unanimous verdict of not guilty.

12           You may be as leisurely in your deliberations as

13   the occasion may require, and you should take all the time

14   that you may feel is necessary.  I'll ask you now that you

15   retire once again and continue your deliberations with these

16   additional comments in mind to be applied, of course, in

17   conjunction with all the other instructions I've previously

18   given you.  And I will remind you that your verdict, if you

19   reach one, must be unanimous, and I'm going to ask you each

20   individually if there is a verdict whether it is your

21   verdict.

22           Any objection from the Government?

23           MR. SPEIRS:  Not from the United States, sir.

24           THE COURT:  From the defendant?

25           MS. CONNOR:  No, sir.

1          THE COURT:  All right.  Ladies and gentlemen, give

2    it another shot, and we'll wait on you.  You all are

3    dismissed.

4          (Whereupon, the jury was escorted out of the

5    courtroom at twelve oh five to continue in its

6    deliberations.)

7                    VERDICT (AT ONE FIFTY-FIVE P.M.):

8          THE COURT:  We have word that we have a verdict.

9    We'll see.

10         MS. CONNOR:  You don't sound too confident, Judge.

11         (Whereupon, the jury was escorted into the

12   courtroom.)

13         THE COURT:  Okay.  Y'all may be seated.

14         Have y'all reached a verdict?

15         THE FOREPERSON:  Yes, we have.

16         THE COURT:  Okay.  And have you elected a

17   foreperson?

18         THE FOREPERSON:  Yes, we have.

19         THE COURT:  Is that you?

20         THE FOREPERSON:  Yes.

21         THE COURT:  Are you Mr. Zigler?

22         THE FOREPERSON:  Yes, I am.

23         THE COURT:  All right.  Ms. Roy, would you go

24   collect the verdict form.

25         Now, Mr. Zigler, is this your signature on this

```
1   verdict form?

2           THE FOREPERSON:  Yes, sir.

3           THE COURT:  Is this a unanimous verdict?

4           THE FOREPERSON:  Yes, sir.

5           THE COURT:  All right.  Mr. Rush, will you please

6   stand with your counsel.

7           Jury verdict.  "As to the charge contained in count

8   one of the indictment we, the jury, find the defendant

9   guilty."

10          "As to the charge contained in count two of the

11  indictment we, the jury, find the defendant guilty.  So say

12  we all this fifth day of February, two thousand eight."

13  Signed by Mr. Eugene Zigler.

14          THE FOREPERSON:  That's correct, sir.

15          THE COURT:  That's your verdict?

16          THE FOREPERSON:  Yes, sir.

17          THE COURT:  All right.  I'm going to poll the jury,

18  each one.  You've already said it was yours.

19          (Whereupon, the jury was polled and each and every

20  juror confirmed the verdict as read.)

21          THE COURT:  Okay.  Let the record reflect that each

22  juror orally acknowledged that this was his or her verdict.

23          Mr. Rush, you and your counsel can be seated now.

24          Ladies and gentlemen, I don't need to tell that you

25  you've performed a valuable service this week.  You've taken
```

1    your job very seriously and the Court appreciates that.  Our

2    system could not function at all without you appearing for

3    jury service and doing your civic duty.  And so it's much

4    appreciated.  And with that, you are dismissed.  Thank you

5    for coming.

6              (Whereupon, the jury was escorted out of the

7    courtroom, and the following colloquy ensued):

8              THE COURT:  All right.  You all may be seated.

9              Mr. Rush, on the verdict of the jury, the Court

10    judges you guilty as charged in the indictment on both

11    counts.

12              I'm going to set sentencing for April eighteenth at

13    nine a.m.

14              Mr. Speirs, what is the status of this defendant

15    regarding detainers and the like?

16              MR. SPEIRS:  Your Honor, from talking with counsel

17    there is a hold on him, Judge.  Although that would supersede

18    any particular statute that the Government has, and I think

19    the proper procedure, Judge, would be that he would be

20    remanded back to the custody of the marshal based on the hold

21    that's already on him, Your Honor.

22              THE COURT:  All right.  Ms. Connor, do you have any

23    opposition to that or any other information?

24              MS. CONNOR:  Well, Your Honor, he does have a hold

25    from state Pardon and Parole, and as I explained to him until

1  that issue is resolved there is nothing we can do.

2            THE COURT:  Okay.  Mr. Rush, I will remand you to

3  the custody of the United States marshal until our next

4  proceeding.

5            Is there anything else to come before the Court?

6            MR. SPEIRS:  Not from the United States, Judge.

7            THE COURT:  Anything from the defendant?

8            MS. CONNOR:  No, sir.

9            THE COURT:  Okay.  You all are dismissed, and we're

10 adjourned.

11           MR. SPEIRS:  Your Honor, co-counsel just brought it

12 up and I don't know if you reserved your ruling for judgment

13 of acquittal, and I don't know if it would be prudent at this

14 time to address that.  I just didn't want to adjourn without

15 taking care of that, or whether it's moot.

16           THE COURT:  Well, at this time I'll deny the motion

17 for judgment of acquittal that was made by the defendant.

18           MR. SPEIRS:  Thank you.

19           THE COURT:  We're adjourned.

20           (Whereupon, the proceedings were concluded.)

21

22

23                    *  *  *  *  *  *  *  *

24

25

1

2                    COURT REPORTER'S CERTIFICATE

3

4

5          I certify that the foregoing is a correct

6    transcript from the record of proceedings in the

7    above-entitled matter as prepared by me to the best of

8    my ability.

9

10         I further certify that I am not related to any of

11   the parties hereto, nor their counsel, and I have no

12   interest in the outcome of said cause.

13

14         Dated this 29th day of May 2008.

15

16                         \s\ Mitchell P. Reisner, CM, CRR

17                         **MITCHELL P. REISNER, CM, CRR**
                           Official US Dist. Court Reporter

18                         Registered Professional Reporter
                           Certified   Real-Time   Reporter

19

20

21

22

23

24

25

MITCHELL P. REISNER, CM, CRR
Official U. S. Court Reporter
Middle District of Alabama
(334) 265-2500